FILED & ENTERED

JUL 12 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>Matthew F. Gallagher and<br>Melissa A. Gallagher,<br><br><br><br>                                   Debtors. | Case No.: 2:12-bk-10213-NB<br><br>CHAPTER 13<br><br>**MEMORANDUM DECISION SUSTAINING OBJECTIONS TO CONFIRMATION OF CHAPTER 13 PLAN**<br><br>Hearing:<br>Date:   April 19, 2012<br>Time:  10:00 a.m.<br>Place: Courtroom 1552 |

**I.     INTRODUCTION**

In November of 2005 the above-captioned debtors (the "Gallaghers") received a loan in the original principal amount of approximately $607,200. On January 4, 2012 (the "Petition Date") they filed their chapter 13 bankruptcy petition.

The Gallaghers do not dispute that they have failed to make a huge number of monthly mortgage payments – twenty five as of the Petition Date. *Objection to Confirmation of Chapter 13 Plan* (dkt. 14) ("*Objection*") para. 1 & 6 & Ex.A. Their original chapter 13 plan (dkt. 10) lists an alleged arrearage of $47,161, which they proposed to cure over time. The Objection asserts that in fact the total prepetition arrearage is approximately $106,519.70. *Objection* (dkt. 14) para. 6. In response the Gallaghers filed an amended chapter 13 plan on April 5, 2012 (dkt. 20) that purports to

-1-

reinstate the loan without paying *any* arrears. That plan was also objected to. *Reply* (dkt. 25).

A confirmation hearing was held at the date and time listed in the caption. Appearances were made by Shannon A. Doyle for the Gallaghers, Jared D. Bissell for US Bank (defined below), and Angela Gill for the Chapter 13 Trustee.

This Memorandum Decision sustains the objections to the Gallaghers' proposed chapter 13 plans (dkt. 10 & 20).

## II.    DISCUSSION

The objecting party is US Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee (successor by merger to LaSalleBank National Association) as Trustee for Thornburg Mortgage Securities Trust 2006-4 ("US Bank"). The Gallaghers argue that US Bank is not the real party in interest, or lacks standing, or is otherwise prevented from arguing that the chapter 13 plan is unconfirmable. *Response* (dkt. 21) at 9:15-10:14 *et seq.* (citing *inter alia In re Veal*, 450 B.R. 897 (9th Cir. BAP 2011), *and* Rule 17(a)(1), Fed. R. Civ. P., incorporated by Rules 3015(f), 7017 and 9014, Fed. R. Bankr. P.) ("Rule 17(a)(1)").

Specifically the Gallaghers argue that: (A) the promissory note ("Note") on which US Bank relies is not authentic; (B) the purported assignments of the Note to US Bank are void; and (C) US Bank is prohibited from receiving a transfer of the Note under the Trust Agreement governing the securities that were issued in connection with the pool of loans to which the Gallaghers' loan belongs. These arguments are all unpersuasive.[1]

### A.    The Gallaghers' Challenges to the Authenticity of the Note Are Not Persuasive

The Gallaghers admit that they "executed a promissory note … and deed of trust" ("DOT") in connection with the loan. *Response* (dkt. 21) at 6:4-5. But they challenge

---

[1] US Bank argues that the Gallaghers are challenging the "validity" of its lien and therefore an adversary proceeding is required pursuant to Rule 7001(2), Fed. R. Bankr. P. But the Gallaghers appear not to be challenging the validity of the lien itself. Instead they challenge the standing of US Bank to enforce that lien, or whether US Bank is the real party in interest for purposes of enforcing that lien or protecting other rights under the loan documents. Therefore US Bank has not established that an adversary proceeding is presently required.

whether the particular Note on which US Bank relies is authentic. *Id.* at 9:6-10.

(1) Location. The Gallaghers argue that the Note cannot be authentic because they "were out of state on the purported execution date of the Note." *Response* (dkt. 21) at 9:7. That makes no sense because *there is no* "purported execution date" of the Note: the first page of the Note shows an *effective date* of November 23, 2005, but the signature on the last page is undated. *See id.* Ex. 5. That format is common, precisely because the signer may be unavailable to execute the loan documents on the effective date, or for other reasons of administrative convenience.

(2) Spouse's signature. The Gallaghers argue that the Note is not authentic because it "includes only one signature by 'Matthew Gallagher' but the Debtors signed their loan documents together." *Response* (dkt. 21) at 9:7-9. That argument is unavailing.

Ms. Gallagher's sweeping statement that she executed the "loan documents" is too tenuous for me to find that she did in fact execute the Note, without corroborating evidence such as a photocopy of the Note with her signature. I take judicial notice that it is not unusual for a promissory note to be executed by only one spouse, because for example that spouse may have a better credit rating than the other. In such situations both spouses typically execute the deed of trust because of community property laws and other considerations. The Gallaghers have not shown that there is anything wrong with this practice.

In addition, supposing for the sake of discussion that Ms. Gallagher did execute a promissory note, the Gallaghers have not shown how that would render the Note at issue inauthentic. They do not dispute that Mr. Gallagher signed the Note, so US Bank can pursue recovery from him and from community property, and for that matter it could choose whether to pursue Ms. Gallagher separately on account of any lost or destroyed promissory note. *See* Cal. Com. Code § 3309. The allegedly missing signature is not a defense.

(3) Initials. In seeming contradiction to their assertion that they both executed all

-3-

of the loan documents, the Gallaghers next argue that "the initials on the Note do not match [their own]." *Response* (dkt. 21) at 9:9-10 and attached *Decl.* at 3:3-6. They appear to mean that the initials of one of them are written in cursive on another document but in printed letters on the Note. So what?

That does not establish that the Note is inauthentic. If they seek to establish some sort of forgery then would need to prove that, presumably with expert testimony and other evidence, none of which has been presented. Moreover they do not deny having received the funds, and they do not challenge the authenticity of the DOT so it is unclear what they ultimately would accomplish if they could prove some sort of forgery of one of their initials.

### B. The Gallaghers Have Not Established That Assignments of the Note to US Bank Are "Void" or Otherwise Ineffective

The Gallaghers argue that the assignments of the Note to US Bank are "void," "fraudulent" or otherwise ineffective. On this basis they assert that US Bank lacks standing.

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *In re Edwards*, 454 B.R. 100, 104 (9th Cir. BAP 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (internal quotation marks omitted). Although standing has both constitutional and prudential aspects (*Warth*, 422 U.S. at 498), it is undisputed that US Bank has constitutional standing, so the standing issue comes down to whether it also has prudential standing. Prudential standing requires that a party must assert its own legal rights rather than the legal rights of others. *Veal*, 450 B.R. at 907.

The Gallaghers also object that US Bank is not the real party in interest under Rule 17(a)(1). "The real party in interest under Rule 17 is the party with the right to enforce a claim under the applicable substantive law." *In re Hwang*, 438 B.R. 661, 665 (C.D. Cal. 2010) (citation omitted). "Generally, real parties in interest have standing, but not every party who meets the standing requirements is a real party in interest." *Veal*,

450 B.R. at 907 (quoting 4 *Moore's Federal Practice* § 17.10[1], at p. 17-15 (3d ed. 2010) (footnotes omitted)).

Based on the foregoing, the central issue is whether US Bank has the "right to enforce" the claim represented by the Note and secured by the DOT.  If so, then it has prudential standing and it is the real party in interest.

The Gallaghers' arguments on these issues are not entirely clear.  But they appear to take the position that (i) the Note could only be transferred pursuant to California real estate law, meaning pursuant to an instrument recorded in the real estate records rather than the allonges attached to the Note, and (ii) without a cognizable transfer of the Note the assignment of the DOT to US Bank is "meaningless." *Response* (dkt. 21) at 11:19.  I reject both arguments.

### 1. **US Bank, As The Person Entitled to Enforce The Note, Can Object to the Chapter 13 Plan**

The Note was assigned by two allonges, both attached to the Note.  *Objection* (dkt. 14) Ex. A (last two pages); *Reply* (dkt. 25) Ex. A p. 13.  The allonge from the original lender ("Original Lender") states, "Pay to the Order of Wells Fargo Bank, N.A." ("Wells Fargo").  *Id.*  The second allonge is endorsed by Wells Fargo in blank.  *Id.*

A promissory note endorsed in blank or payable to the bearer can be enforced by the person who has physical possession of the note.  *See* Cal. Com. Code § 3301; *Hwang*, 438 B.R. at 665 ("Under California law, the holder of a note has the right to enforce it, regardless of whether the holder is the owner of the note or is in wrongful possession of the note.").  The Gallaghers do not dispute that US Bank (or its agent) has physical possession of the Note, and in any event US Bank confirms in its Reply that it does have such possession.  *See Reply* at 4:19.

In other words, US Bank has established that is the person entitled to enforce the Note.  Therefore it is the real party in interest and it has standing to object to the chapter 13 plan's proposed treatment of the indebtedness under the Note.  *See Veal*, 450 B.R. 897.

## 2. <u>US Bank's Interest In the Note Need Not Be Reflected in the Real Property Records to be Enforceable</u>

The foregoing analysis follows *Veal*. The Gallaghers themselves rely on *Veal* in their written Response. But at oral argument they changed course and attempted to distinguish *Veal*.

Counsel for the Gallaghers pointed out that the parties in *Veal assumed* the applicability of the Uniform Commercial Code (the "UCC"). *Veal*, 450 B.R. at 909. In this case, she argued, the governing law is not the UCC (as enacted in California) but the California real estate laws, apparently meaning that the transfer of the Note to US Bank would have to be reflected in the real property records to be cognizable. In support of this new argument the Gallaghers rely on *Debrunner v. Deutsche Bank Nat. Trust Co.,* 204 Cal.App.4th 433 (2012).

*Debrunner* does not help the Gallaghers. *Debrunner* deals with *foreclosure* under a DOT, not transfer of a promissory note, and it acknowledges that the UCC governs negotiable instruments such as promissory notes. *See Debrunner*, 204 Cal.App.4th at 441 (citing *Padayachi v. IndyMac Bank*, 2010 WL 4367221 (N.D. Cal. 2010) for the proposition that "[a]lthough Article 3 of *the UCC governs negotiable instruments*, it does not apply to nonjudicial foreclosure under deeds of trust.") (emphasis added).[2]

The matter before me is not a foreclosure but an objection to confirmation of a chapter 13 plan that proposes to ignore the arrears owed under the Note. It is hard to see how US Bank, as the person entitled to enforce that Note, would not be the real party in interest with standing to object that proposed treatment. It is, for the reasons stated in *Veal*. *See Veal*, 450 B.R. 897.

---

[2] The parties have not briefed whether the Note is in fact a negotiable instrument, but that has not been shown to make any difference. *Debrunner* referred to negotiable instruments, but as noted in *Veal* the same principles articulated by the UCC can be applied to transfers of non-negotiable instruments, and the Gallaghers have not shown any reason to do otherwise. *See Veal*, 450 B.R. at 909 n.14.

## 3. The Gallaghers' Remaining Arguments Regarding the Note Transfer Rest on The Same Faulty Premises

### a. Section 2932.5 of the California Civil Code Adds Nothing to the Gallaghers' Arguments

The Gallaghers cite California Civil Code § 2932.5, apparently for the proposition that transfers of the Note cannot be effective until they are recorded in the real estate records. *Response* (dkt. 21) at 10:15-25. That statute provides, "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money," then that power of sale "is part of the security" and may be exercised by "the assignee if the assignment is duly acknowledged *and recorded.*" Cal. Civ. C. § 2932.5 (emphasis added).

There is substantial authority that this statute, which names mortgages but not deeds of trust, does not apply to the latter.[3] In any event, by its terms the statute applies only to the exercise of a "power of sale." Assuming for the sake of discussion that US Bank would have to show compliance with the statute by the time it sought to exercise the power of sale under the DOT, that is not the issue before this Bankruptcy Court. In this contested matter US Bank is not exercising a power of sale, it is objecting to confirmation of a proposed chapter 13 plan. The Gallaghers have not shown how the

---

[3] *See Herrera v. Federal National Mortgage Association*, 205 Cal.App.4th 1495, 1509 (2012) ("It is well established that section 2932.5 does not apply to trust deeds in which the power of sale is granted to a third party, the trustee. Section 2932.5 applies to mortgages, in which the mortgagor or borrower has granted a power of sale to the mortgagee or lender."); *Calvo v. HSBC Bank USA, N.A.* 199 Cal.App.4th 118, 123 (Ct. App. 2011), *rev. denied* (Cal.S.Ct. Jan. 4, 2012) ("The rule that section 2932.5 does not apply to deeds of trust is part of the law of real property in California."); *Caballero v. Bank of America*, 2012 WL 475766 at *1 (9th Cir. 2012) ("For the reasons stated in *Calvo* and the many district court decisions that have reached the same conclusion…we find no 'convincing evidence' that the California Supreme Court would hold that California Civil Code section 2932.5 applies to deeds of trust."); *Haynes v. EMC Mortgage Corporation*, 205 Cal.App.4th 329, 332 (Cal.App. 1 Dist. 2012) ("That section 2932.5 applies only to mortgages is well settled."); *In re Salazar*, 2012 WL 896214 at *3 (S.D. Cal. 2012) ("the Court finds that § 2932.5 does not apply to deeds of trust."); *Lindsay v. America's Wholesale Lender, et al.*, 2012 WL 83475 at *2 (C.D. Cal. 2012) ("Section 2932.5 'does *not* require the recordation of an assignment of beneficial interest for a *deed of trust*, as opposed to a mortgage.'") (quoting *Caballero v. Bank of America,* No. 10-CV-02973-LHK, 2010 WL 4604031 at *3 (N.D. Cal. 2010) (emphasis in original); *Yau v. Deutsche Bank National Trust Co. Americas, et al.*, 2011 WL 5402393 at *9 ("[Section 2932.5] does not apply where the power of sale is set forth in a deed of trust. Section 2932.5 applies only to mortgages that give a power of sale to the creditor, not to deeds of trust which grant a power of sale to the trustee.") (citation omitted). *But see In re Cruz,* 457 B.R. 806 (Bankr. S.D. Cal. 2011). *See also Tamburri v. Suntrust Mortgage, Inc.,* 2011 U.S. Dist. LEXIS 72202 at *10-13 (N.D. Cal. 2011).

statute is relevant to that objection.

### b. **MERS' Alleged Inability to Assign the Note is Irrelevant, Because It is Not MERS Who Executed The Allonges**

The Gallaghers devote a substantial portion of their arguments to alleged problems with the Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is the entity which is named as the Beneficiary in the DOT, as "nominee" for the Original Lender. *Objection* (dkt. 21) Ex. 1 pp. 9-10.

To put the issues in context, the reason for designating MERS as a nominee for lenders is so that many DOTs can be pooled, securitized, fractionalized, and traded via MERS' internal records without having to incur the burdens and risks associated with attempting to record each transfer of every DOT interest with the applicable county recorder's office. *See, e.g., In re Weisband*, 427 B.R. 13, at 20 n.6 (Bankr. D. Ariz. 2010). That delegation to MERS undoubtedly has its drawbacks (among other things, county recorders complain that they receive fewer fees, and both borrowers and loan servicers complain that securitization can make it difficult to determine who has authority to negotiate any departure from strict enforcement of the loan documents). But borrowers like the Gallaghers may benefit at the inception of the loan from reduced transaction costs and an easier flow of capital. In any event, as noted in *Veal*, for purposes of determining prudential standing or the real party in interest it is "irrelevant whether the Note has been fractionalized or securitized – so long as [debtors] do know who[m] they should pay." *Veal*, 450 B.R. at 912.

The Gallaghers point out that MERS executed various documents entitled "Assignment of Deed of Trust" that purport to assign not only the DOT but also the Note or "all rights accrued or to accrue under [the Note]." *Response* (dkt. 21) Ex. 1 pp. 26-31. The Gallaghers argue that the DOT only grants MERS the authority to assign the DOT itself, not the Note, and there is no evidence in the record of any "agency agreement" or other authority granted to MERS. *Response* (dkt. 21) at 11:14-24 & 12:12:15-13:3 (citing cases).

The courts disagree whether MERS does in fact have sufficient authority to effectuate a transfer of the Note under the standard language of the DOT. *Compare, e.g., Tilley v. Ampro Mortgage*, 2012 WL 33033, at *3 (E.D. Cal. 2012) ("courts have found that whatever the role a nominee may play when 'necessary to comply with law and custom' [the standard language of the DOT], MERS acts as the agent of the lender and may assign a beneficial interest in the deed of trust, *assign the note*, and appoint a substitute trustee.") (emphasis added) (citing *Fontenot v. Wells Fargo Bank,N.A.*, 198 Cal.App.4th 256, 270-271 (2011)) *with In re Weisband*, 427 B.R. 13, 20 (Bankr. D. Ariz. 2010) (holding that MERS lacks authority to assign *any* documents under standard language) *and In re Fontes*, 2011 WL 3300933 at *4 (9th Cir. BAP) ("although the deed of trust gave MERS, as nominee, the power to assign the deed of trust, it did not mention the note, nor did the note itself name MERS as nominee, so MERS could not take this right from the documents themselves").

But I need not decide this issue. MERS did not execute the allonges. The Original Lender and Wells Fargo executed allonges, and as discussed above that was sufficient to transfer the Note to US Bank.

For all of the foregoing reasons, US Bank, as the person entitled to enforce the Note, is the real party in interest and has standing to object to the chapter 13 plan's proposed treatment of the Note. The Gallaghers' arguments must be rejected on that basis alone.

### 4. Alternatively, US Bank as Assignee of the DOT Can Object to the Plan

Supposing for the sake of discussion that the allonges' transfers of the Note to US Bank were void (which they are not), US Bank can object to the plan solely on the basis of being the assignee of the DOT. The Gallaghers claim that "[i]f the Deed of Trust is severed from the Note, it becomes meaningless." *Response* (dkt. 21) at 11:18-19. That is incorrect.

*Debrunner* holds that a creditor who has not yet received a transfer of the

promissory note can *commence* nonjudicial foreclosure based solely on its interests under the DOT.  That is not to say that a creditor can *complete* nonjudicial foreclosure without the promissory note,[4] but it can at least start the process.  *Debrunner*, 204 Cal.App.4th at 442 (rejecting common law, cited in *Veal*, that "an assignment of the [DOT] alone is a nullity") (footnote and citation omitted).  *See also Veal*, 450 B.R. at 915-18 & n. 34 (citing authority that under California law nonjudicial foreclosure can be commenced by an assignee of the DOT alone, without the related promissory note).

Given that US Bank could commence foreclosure without the Note, it certainly can take the lesser step of defending its interests under the DOT against the proposed treatment in a chapter 13 plan.  This is not to say that, if the Note and the DOT were held by different entities, the Gallaghers would have to take the risk of paying one entity and not the other.  If those were the facts, then the Gallaghers might need to hold distributions in a disputed claims reserve pending a determination of who was the true creditor.

But those are not the facts and that issue is not before me.  Rather, US Bank is taking the defensive position of objecting to the chapter 13 plan's proposed radical changes in rights under both the Note and the DOT.  US Bank can defend against that proposal either as holder of the Note, or the DOT, or both.  *See Veal*, 450 B.R. at 913-22 (analysis of standing and real party in interest is different for relief from stay than for claims allowance).

The Gallaghers raise several additional arguments regarding assignment of the Note, but I reject each of those arguments below.  In addition, the arguments are all fruitless because, as set forth above, US Bank can rely on the allonges to the Note without having to rely on any assignment of the DOT.

### a. **Redundancy Does Not Invalidate the DOT Assignments**

The Gallaghers point to three DOT assignments, which they obtained from

---

[4] *See Santens v. Los Angeles Fin. Co.*, 91 Cal.App.2d 197, 201-02 (1949); *Cockerell v. Title Ins. & Trust Co.,* 42 Cal.2d 284, 291 (1954) (summarizing *Santens* as holding that the deed of trust "…could only be foreclosed by the owner of the note").

US Bank's proofs of claim in an earlier case.[5] The Gallaghers are correct that the assignments appear to be redundant, but they do not show why that matters.

The first assignment is from MERS directly to US Bank. The latter two assignments are from MERS to Wells Fargo and then from Wells to US Bank.

In other words, US Bank apparently received the same thing twice. This appears to be either a correction of some defect in the first assignment or an error in issuing redundant assignments, but in any event the Gallaghers have not shown anything ineffective, improper, or nefarious about this redundancy.

### b. The Gallaghers Have Not Established Any Ineffectiveess of the DOT Assignments Due to Format or Timing

The first assignment is dated April 16, 2010 and recorded April 22, 2010, and it is from MERS, "by First American Title Insurance Company ['First American'], its Attorneys In Fact, as Beneficiary," to US Bank ("Assignment 1"). *Response* (dkt. 21) Ex. 1 pp. 26-27. The second assignment is dated May 19, 2010 and recorded August 27, 2010 from MERS, "Solely as Nominee" for the Original Lender, to Wells Fargo ("Assignment 2"). *Response* (dkt. 21) Ex. 1 pp. 28-29. A third assignment is dated May 19, 2010 and recorded August 30, 2010, from Wells Fargo to US Bank ("Assignment 3"). *Response* (dkt. 21) Ex. 1 pp. 30-31.

The Gallaghers object that MERS "failed to state Lender's name in [the Assignment 1] transaction," apparently meaning that Assignment 1 was executed by First American, as attorney in fact for MERS, without naming the Original Lender in the signature line itself. *Response* (dkt. 21) at 11:6-8 (footnote omitted). From this they argue that the assignment is "void" because MERS was acting in its own name instead of the name of its principal, citing *Fisher v. Salmon*, 1 Cal. 413 (1851).

*Fisher* is not as broad as the Gallaghers argue. It involved a dispute between the successors in interest to the agent and the principal, in which the court held that the

---

[5] US Bank argues that I should disregard the Gallaghers' evidence regarding the chain of assignments because those documents were filed by US Bank in a prior dismissed case, not in the instant case. *Reply* (dkt. 25) at 5:19-27. I reject that argument. I will not ignore documents on which US Bank itself previously relied, which also were recorded in the public records.

-11-

agent could not act *beyond* the authority granted by the principal.  *Fisher*, 1 Cal. At 413-14.  *Fisher* does not stand for the proposition that, simply because the signature line did not name the Original Lender, MERS somehow lost the authority that actually *is* granted to it in the DOT, which the Gallaghers do not challenge.

In addition, supposing for the sake of discussion that Assignment 1 were ineffective, the DOT was separately assigned to US Bank through Assignments 2 and 3.

The Gallaghers next object, "Notably Assignment 1 was recorded eight days after the recording of a Notice of Sale by First American."  *Response* (dkt. 21) at 11:2-3.  The Gallaghers do not explain what is notable about this timing, but their argument might be that before US Bank received an assignment of the DOT First American was purporting to act as its agent under the DOT.  Alternatively, perhaps the Gallaghers' argument is that First American violated Civ. C. § 2932.5 by taking steps to exercise the power of sale before the recording of the assignment under which derived its authority.  Again, Assignments 2 and 3 appear to solve this problem by ratifying First American's authority, if it needed ratification.  Principals ratify the acts of agents all the time.[6]

### c. The Gallaghers Have Not Established Any Ineffectiveess of the DOT Assignments Due to Notarizations

The Gallaghers argue that the assignment documents are somehow invalid because "the same notary" notarized assignments on "the same day" for entities located in Michigan and South Carolina.  *Response* (dkt. 21) at 7:11-16 (emphasis omitted).  That argument is misguided, if not misleading.  The *entities'* principal offices might be located in different states, but the notarization shows that both the *notary* and the *individuals* who signed the documents were in South Carolina.  *Response* (dkt. 21) Ex. 1 at 29 & 31.

The Gallaghers argue that on one copy of Assignments 2 and 3 the person

---

[6] The Gallaghers appear to argue that principals cannot ratify the acts of agents when real property is involved, citing *Videau v. Griffin*, 21 Cal. 9 (1863).  That sweeping generalization is incorrect:  *Videau* involved the statute of frauds, and a contest between two transferees of the same property, one of whom claimed to take first in time but through a person who was not authorized to act for the transferor at the time.  No such facts are presented in this case.

-12-

whose signature is being notarized is identified in typewritten text as "Assistant Secretary" of MERS, whereas the other copy of the same documents has handwritten marks crossing off those words, substituting the signer's name, and adding the notary's initials next to the change.  *See Response* at 8:6-9 & Ex. 1 at PDF pp. 27-30 *and compare id.* Ex. 4 at PDF pp. 28-30.  This appears to be nothing more than a correction by the notary after an initial photocopy was made, but regardless what it is the Gallaghers have not established why that would bar US Bank from objecting to confirmation if their chapter 13 plans.

### d. The Purported Dual Agency Is Not Shown to Make the DOT Assignments Ineffective

The Gallaghers argue that one of the persons executing an assignment could not have been an authorized agent for MERS because a different document designates her "as a signer of documents for Wells Fargo."  *Response* (dkt. 21) at 7:18-19 & Ex. 2.  But the documents are of different dates so the person at issue may have been *sequentially* an authorized signatory for one institution and *then* another.  Second and alternatively, the Gallaghers have not presented any authority that there is anything wrong with *simultaneously* acting as an authorized signer for two different entities who are not shown to be adverse to one another.  Lawyers do so all the time, for example.

### 5. Pejorative Terms do not Make the DOT Assignments Ineffective

The Gallaghers argue that one of the document signers is "a robo-signer," by which they mean someone who "signs foreclosure documents without reviewing them or having actual knowledge of the matter" and who "fraudulently certif[ies] that the financial institution has the correct and required legal documentation to foreclose on the property."  *Response* (dkt. 21) at 8:1 & n.2.  The Gallaghers' pejorative terms and allegations about what might have occurred in connection with *other* loans add nothing to their argument:  they have not established any lack of "correct and required legal documentation" regarding their own loan, let alone any fraud perpetrated against them.

### 6. Prima Facies Validity of US Bank's Claim

Supposing for the sake of discussion that any one of the foregoing arguments had any partial merit, they are insufficient to overcome the prima facie validity of the proof of claim filed by US Bank on May 10, 2012.  Fed. R. Bankr. P. 3001(f).

## C. The Gallaghers Have Not Established Their Standing to Object to Any Alleged Violation of the Trust Documents

The Gallaghers argue that there has been some sort of violation of the trust agreement that was executed in connection with the securitization of the loan. *Response* (dkt. 21) at 16:9-18:21.  As discussed at oral argument at the hearing on April 19, 2012, they have not shown how they have any standing to assert an alleged violation of a trust agreement to which they are not a party, which involves groups of investors in pools of loans.  The Gallaghers have nothing to do with that trust agreement.

## D. The Gallaghers Offer No Actual Defense For Their Chapter 13 Plan

The Gallaghers' original chapter 13 plan would not fully cure the arrears under the Note and their amended chapter 13 plan simply ignores the arrears.  As US Bank argues, these defects are fatal to the Gallaghers' efforts to confirm a chapter 13 plan for several alternative reasons.

First, the Gallaghers fail to meet the statutory requirement to cure arrearages within a reasonable period not exceeding 60 months.  11 U.S.C. § 1322(b)(5) & (d). Second, they fail to provide the present value of the arrearages.  11 U.S.C. § 1325(a)(5)(B)(ii).  Third, their proposals are not feasible because they lack sufficient monthly disposable income to cure the foregoing defects.  11 U.S.C. § 1325(a)(6).

The Gallaghers offer no contrary arguments.  US Bank's objections to confirmation are sustained.

## III. CONCLUSION

The Gallaghers' original and amended chapter 13 plans both propose to disregard, either in whole or in part, the arrears owed under the Note and secured by

1 the DOT.  The Gallaghers offer no defense for that treatment of their debt, other than to
2 challenge whether US Bank has standing or is the real party in interest.  Those
3 challenges lack merit.  US Bank can object to the proposed treatment of that debt, both
4 as the person entitled to enforce the Note and alternatively as the assignee of the DOT
5 given to secure that debt.  US Bank's objections to confirmation are sustained.
6 Confirmation will be DENIED by separate order.

###

DATED: July 12, 2012

_____
United States Bankruptcy Judge

-15-

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): MEMORANDUM DECISION SUSTAINING OBJECTIONS TO CONFIRMATION OF CHAPTER 13 PLAN was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of 7/11/12, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Kathy A Dockery (TR): efiling@CH13LA.com
Shannon Doyle: sdoyle@blclaw.com, ecf@blclaw.com;notices@blclaw.com; borowitzclark1@gmail.com
Jared D Bissell: ecfcacb@piteduncan.com

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Matthew F Gallagher
6334 W 80th Pl
Los Angeles, CA 90045

Melissa A Gallagher
6334 W 80th Pl
Los Angeles, CA 90045

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page